## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **JOSEPH GUNDER**, on behalf of himself and others similarly situated, | Case No. 1:25-CV-00493-ALT |
| Plaintiff, | |
| vs. | |
| **HUMANA INC.**, | |
| Defendant. | |

## DEFENDANT HUMANA INC.'S
## MOTION TO STRIKE CLASS ALLEGATIONS

Defendant Humana, Inc. ("Humana") respectfully moves this Court to strike Plaintiff Joseph Gunder's ("Plaintiff") class allegations from his Complaint pursuant to Federal Rules of Civil Procedure 12(f) and 23.

As set forth in the accompanying Memorandum, Plaintiff's class allegations in the Complaint should be stricken based upon the following:

## MEMORANDUM OF LAW

### I.    INTRODUCTION

Plaintiff seeks to certify a sprawling and internally inconsistent class of persons allegedly called "using a prerecorded voice." Yet the Complaint itself does not allege that Humana made any *prerecorded voice calls* to Plaintiff or others— rather, it allegedly left prerecorded voicemail messages. That factual distinction is fatal. The TCPA's text and implementing regulations draw a clear line between a call that *uses* a prerecorded voice and one that *delivers* a message to voicemail without live contact. *Compare* 47 U.S.C. § 227(b)(1)(A)(iii) *with* 47 U.S.C. § 227(b)(1)(B). Whether that difference matters is not a question of fact but of statutory scope. The ambiguity within Plaintiff's proposed class—defined in terms of "calls using a prerecorded voice"—makes it impossible to identify objective criteria for class membership.

Even if the phrase "used … a prerecorded voice" could be stretched to cover both live calls and deposited voicemails, the class remains fatally overbroad. It would sweep in individuals who consented to receive such messages, Humana customers and accountholders expressly excluded from liability under the statute, and individuals called for legitimate non-marketing reasons. The inclusion of numerous uninjured or legally distinct persons destroys commonality under Rule 23 and renders the class definition inherently ambiguous.

Compounding these defects, Plaintiff is not a member of the class he purports to represent. The class is expressly limited to those "to whom Register.com, Inc. placed a call … in connection with which Humana used a prerecorded voice." Complaint ("Compl.") ¶ 27. Plaintiff, however, alleges that the calls came directly from Humana. He thus cannot represent a class defined around another caller's conduct. Under long-settled precedent, a named plaintiff who does not fall within his own proposed class cannot maintain a class claim.

For all these reasons, the Court should strike the class allegations now, before costly and unnecessary discovery proceeds.

## II.    PLAINTIFF'S ALLEGATIONS

Plaintiff filed this putative class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Humana placed "telephone solicitation" calls to his cellular telephone between October 2024 and August 2025 using an artificial or prerecorded voice, without his prior express consent. Compl. ¶¶ 13, 17-19, 22.

Plaintiff alleges that several of these calls resulted in prerecorded voicemails, rather than live interactions. *Id.* ¶ 22. He describes the messages as "robotic" and

"monotone," and alleges that they were delivered using "an artificial or prerecorded voice." *Id.* ¶ 23.

Based upon those allegations, Plaintiff seeks to represent a nationwide class defined as follows:

> "All persons throughout the United States (1) to whom Register.com, Inc. placed a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to a Humana customer or accountholder, (3) in connection with which Humana used an artificial or prerecorded voice, (4) from four years prior to the filing of this case through the date of class certification."

Compl. ¶ 27.

Aside from that definition, however, the Complaint contains no factual allegation whatsoever that Register.com placed any calls, acted as Humana's vendor, or participated in the alleged conduct. Every operative paragraph attributes the calls directly to Humana. *See id.* ¶¶ 18–25.

This internal inconsistency—between the factual allegations describing Humana's alleged conduct and the class definition referencing calls "placed by Register.com, Inc."—renders the class definition self-contradictory. On the face of the pleading, Plaintiff cannot be a member of the very class he seeks to represent, since he alleges that he received calls from Humana, not from Register.com.

As detailed below, that flaw is compounded by multiple others: the class definition's ambiguous reference to "calls using a prerecorded voice," its overbreadth for failing to exclude persons who provided consent, and its vague

4

exclusion of numbers "assigned to a Humana customer or accountholder." Collectively, these defects make the proposed class facially uncertifiable as a matter of law.

## III.    LEGAL STANDARD—Under Seventh Circuit Law, Class Allegations Should Be Stricken Under Rule12(f) When—As Here—The Proposed Class Is Facially Uncertifiable.

Under Federal Rule of Civil Procedure 12(f), the Court may strike "from any pleading . . .any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Courts have considerable discretion in deciding whether to grant motions to strike. *See Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994). A motion to strike allegations under Fed. R. Civ. P. 12(f) is the "appropriate device to determine whether the case will proceed as a class action." *Sorsby v. TruGreen Ltd. P'ship*, No. 20-CV 2601, 2023 WL 130505, at *2 (N.D. Ill. Jan. 9, 2023) (quoting *Wright v. Fam. Dollar, Inc.*, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010); *see also Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 294 (N.D. Ill. Mar. 17, 2014) (citing cases within this district that evaluate motions to strike under Rule 23); *Murdock-Alexander v. TempsNow Employ't,* No. 16 C 5182, 2016 WL 6833961, at

*3 (N.D. Ill. Nov. 21, 2016) ("The interplay of Rules 12(f), 23(c)(1)(A), and 23(d)(1)(D) empowers the Court to dismiss or strike class allegations at the pleading stage.") (citations omitted).

While motions to strike are disfavored, courts in this Circuit—and nationwide—agree that a motion to strike a class is properly granted where the definition is flawed in a fundamental way that is not curable by discovery. *Harris v. Rust-Oleum Corp.*, No. 21-CV-01376, 2022 WL 952743, at *3 (N.D. Ill. Mar. 30, 2022).

As such, the court "need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination." *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011); *see also Advanced Dermatology v. Fieldwork, Inc.*, 550 F. Supp. 3d 555 (N.D. Ill. 2021).

Further, there is good reason to strike a class early. The U.S. Supreme Court has recognized the dangers of allowing a facially uncertifiable class to proceed to discovery. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2006) (emphasizing the expense and burden of discovery in class actions and stressing that neither "careful case management," nor "careful scrutiny of [the] evidence at the summary judgment stage," will protect defendants from incurring enormous discovery costs). And the Seventh Circuit's case law counsels that a defendant should not be forced to proceed in a case under the weight of an overly broad class that has the tendency

6

to force a settlement of non-meritorious claims. *See e.g. Vann v. Dolly, Inc.*, No. 18 C 4455, 2020 WL 902831, at \*5 (N.D. Ill. Feb. 25, 2020) (citing *Miles v. Am. Honda Motor Co., Inc.*, 2017 WL 4742193, \*5 (N.D. Ill. 2017)), *accord Connectors Realty Grp. Corp. v. State Farm Fire & Cas. Co.*, No. 19 C 743, 2021 WL 1143513, at \*2 (N.D. Ill. Mar. 25, 2021). As these cases demonstrate, the rule is simple: a Court should strike a class where, as here, the pleadings make clear the proposed class could never proceed.

## IV.     ARGUMENT— PLAINTIFF'S CLASS ALLEGATIONS SHOULD BE STRICKEN BECAUSE THE CLASS IS FACIALLY UNCERTIFIABLE AS A MATTER OF LAW.

Courts have inherent authority under Rule 23(c)(1)(A) to determine "at an early practicable time" whether a case may proceed on a classwide basis. *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) ("[A] court may deny class certification even before the plaintiff files a motion requesting certification."). When, as here, the defects in the proposed class are evident from the face of the pleading, a Rule 12(f) motion to strike is the proper mechanism to avoid unnecessary discovery and motion practice. *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013) ) ("The rule's text plainly indicates that the court may decide to reject a plaintiff's attempt to represent a class as soon as it becomes obvious that the plaintiff will be unable to satisfy Rule 23."); *Buonomo v. Optimum Outcomes, Inc.*,

301 F.R.D. 292, 295 (N.D. Ill. 2014) (partially granting a motion to strike class allegations at the pleadings stage).

The class proposed in Plaintiff's Complaint is facially uncertifiable for multiple, independent reasons. Thus, the class allegations must be stricken.

## A.    The Class Definition Is Impermissibly Vague And Ambiguous And Must Be Stricken.

A class must be "defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015) (citations omitted). "Courts have also rejected class definitions that are overly broad, amorphous or vague." *In re Fosamax Prod. Liab. Litig.*, 248 F.R.D. 389 (S.D.N.Y. 2008) (citing *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D.Fla.2003)); *Ligon v. City of New York*, 288 F.R.D. 72, 83 (S.D.N.Y. 2013) (amending a class definition because it was "too vague to enable a proper determination of who is a class member"); *W.R. ex rel. Joseph R. v. Connecticut Dep't of Child. & Fams.*, No. 3:02CV429 (RNC), 2004 WL 2377142 (D. Conn. Sept. 30, 2004) (denying class certification partly because the class definition was vague); *Wisdom v. Easton Diamond Sports, LLC*, No. CV 18-4078 DSF (SSX), 2019 WL 580670, at *6 (C.D. Cal. Feb. 11, 2019), *vacated and remanded*, 824 F. App'x 537 (9th Cir. 2020) (granting motion to strike class allegations where the putative class definition was "vague and overbroad"); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015) ("Class definitions have failed [the ascertainability] requirement when they were too vague…"). "Vagueness

is a problem because a court needs to be able to identify who will receive notice, who will share in any recovery, and who will be bound by a judgment." *Mullins*, 795 F.3d at 660 (citing *Kent v. SunAmerica Life Ins. Co.*, 190 F.R.D. 271, 278 (D.Mass.2000)).

The class definition here suffers from precisely these defects. It hinges on the ambiguous allegation Humana "used a prerecorded voice," but the Complaint does not allege that Plaintiff ever received a prerecorded call. Instead, Plaintiff alleges only that he received voicemails. The TCPA draws a meaningful distinction between a call that "uses a prerecorded voice" and a voicemail that is merely deposited. *Compare* 47 U.S.C. § 227(b)(1)(A)(iii) *with* 47 U.S.C. § 227(b)(1)(B). Plaintiff's class definition does not clarify whether it is limited to individuals who allegedly received 1) a prerecorded voicemail, 2) a live call containing a prerecorded message, or 3) either form of communication. Each alternative would require a different liability analysis. This lack of clarity alone renders the class unascertainable.

If Plaintiff intends to include only individuals who received prerecorded voicemails, then he is not typical of persons who received an actual prerecorded voice call to a landline. Those class members—unlike Plaintiff—would present a straightforward claim under § 227(b). Plaintiff, by contrast, asserts a materially different legal theory involving whether the mere deposit of a voicemail constitutes the statutory "use of a prerecorded voice." That distinction creates a vagueness

9

problem because it is impossible to determine which group he seeks to represent. As *Mullins* explains, vagueness invalidates a class definition where it is unclear "who will receive notice, who will share in any recovery, and who will be bound by a judgment." 795 F.3d at 660 (citation omitted).

Conversely, if Plaintiff intends to include individuals who received live prerecorded calls, he is not a member of that group. A plaintiff who is not within the class he proposes cannot satisfy Rule 23 at any stage. *E. Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403 (1977) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (quotation marks and citations omitted). The class definition's failure to specify which type of communication is encompassed leaves the Court unable to determine class membership ex ante. This alone renders it vague and indeterminate.

The class definition contains a second, independently fatal ambiguity: it excludes numbers "assigned to a Humana customer or accountholder." The definition does not say whether this refers to (a) subscribers who are Humana customers, or (b) telephone numbers that Humana itself assigns to customers in internal systems. One concerns the identity of the consumer; the other concerns the internal numbering practices of a corporate entity. They are wholly different criteria, each leading to different class boundaries. This renders the definition "too vague to enable a proper determination of who is a class member." *Ligon*, 288 F.R.D. at 83.

Because the class definition is imprecise, internally inconsistent, and incapable of uniform application, it violates Rule 23(c)(1)(B) and must be stricken.

## B. The Class Is Overly Broad Because It Includes Individuals Who Consented To Receive Calls.

A class definition must not be "so broad that it sweeps within it persons who could not have been injured." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006). The inclusion of uninjured persons destroys commonality and predominance under Rule 23(a)(2) and (b)(3). See *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011); *Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011). The Seventh Circuit has been clear that an overly broad class cannot be certified. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012). Even allowing an overbroad class to proceed past the pleadings stage creates an inherent unfairness to the defendant in view of the "in terrorem character of a class action." *Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 677-78 (7th Cir. 2009) ("[A] class should not be certified if it contains a great many of persons who have suffered no injury."). As the Seventh Circuit has aptly observed:

> Even if a class's claim is weak, the sheer number of class members and the potential payout that could be required if all members prove liability might force a defendant to settle a meritless claim in order to avoid breaking the company. While that prospect is often feared with large classes, **the effect can be magnified unfairly if it results from a class defined so broadly as to include many members who could not bring a valid claim even under the best of circumstances.**

*Messner,* 699 F.3d at 825 (citing *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006)) (emphasis added).

These concerns are particularly amplified in TCPA actions where the statute provides for a *minimum* of $500 in statutory damages per violation. 47 U.S.C. § 227(b)(3); *see also Kohen*, 571 F.3d at 678 ("When the potential liability created by a lawsuit is very great, even though the probability that the plaintiff will succeed in establishing liability is slight, the defendant will be under pressure to settle rather than to bet the company, even if the betting odds are good."). Thus, courts should not allow an overly broad TCPA class to proceed past the pleadings stage.

Consistent with this framework, courts have properly rejected class definitions as impermissibly overbroad where the "proposed class could potentially include thousands of individuals who consented to receiving calls on their cellphones and thus have no grievance under the TCPA." *Jamison v. First Credit Servs.,* 2013 WL 387217, at *8 (N.D. Ill. July 29, 2013); *see, e.g., Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (finding that because the inclusion of a substantial number of people who voluntarily provided their phone numbers to receive commercial calls rendered the proposed TCPA class "overbroad and the class unfit for certification"); *Leon v. loanDepot.com, LLC*, No. 2:25-CV-01787-JLS-AGR, 2025 WL 2632396, at *3 (C.D. Cal. Aug. 22, 2025) (granting the defendant's motion to strike class allegations because the "proposed

class includes individuals who clearly have no cognizable claim against [the defendant] under the TCPA."). In a TCPA case, such as this one, the critical substantive issue driving the outcome of a case is generally consent. *See Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 327, 329 (5th Cir. 2008). Accordingly in order to certify a case, a Plaintiff must have a theory to prove consent on generalized evidence. *Id.* In the absence of such a generalized theory, the case cannot be certified. *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 514 (E.D. Wis. 2014) ("A plaintiff may not merely propose a method of ascertaining a class without any evidentiary support that the method will be successful.") (quoting *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013).

Here, Plaintiff's proposed class is facially overbroad because it includes every person "in connection with which Humana used an artificial or prerecorded voice," regardless of whether those individuals consented to receive such messages. Compl. ¶ 27. Under § 227(b)(1)(A), calls made with a person's prior express consent are lawful and not actionable. *Blow v. Bijora, Inc.*, 855 F.3d 793, 802 (7th Cir. 2017) ("Consent is a complete defense to liability under the TCPA.").

Humana regularly communicates with current and prospective members who expressly authorize prerecorded informational or reminder messages. Identifying which recipients consented would require a review of each person's enrollment

history, authorization form, or communication preference—precisely the sort of individualized evidence that precludes certification.

A class so defined would necessarily encompass large numbers of uninjured and therefore, it is overly broad and must be stricken at the pleading stage.

## C.    The Class Lacks Commonality.

So too, a class cannot be certified that lacks commonality. *See* Fed. R. Civ. P. 23(a)(2); *Dukes*, 564 U.S. at 350 ("A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23]—that is, he must be prepared to prove that there are in fact … common questions of law or fact." (emphasis added)); *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 498 (7th Cir. 2012) ("Lacking any common questions, [a] class fails to satisfy Rule 23(a)(2) and should not [be] certified.").

A class lacks commonality where common answers on critical substantive issues cannot be demonstrated evenly across the entire class. *Dukes*, 564 U.S. at 350 ("What matters to class certification … [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."). Commonality requires more than simply whether class members have suffered a violation of the same statutory provision. *See Dukes*, 564 U.S. at 349–50 ("Commonality requires the plaintiff to demonstrate that the class members 'have

suffered the same injury' … not merely that they have all suffered a violation of the same law.").

Rather, the plaintiff must show that a classwide proceeding will "generate common answer[s] apt to drive the resolution of the litigation." *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 298 (N.D. Ill. 2014) (quoting *Dukes*, 564 U.S. at 350). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Messner*, 669 F.3d at 815 (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)). In other words, there must be at least one "common contention" that "is central to the validity" of the claims and that can be resolved "in one stroke." *Dukes*, 564 U.S. at 349.

"Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* at 350. For instance, in *Dukes*, the Supreme Court found that commonality was not satisfied because "[t]he only corporate policy that the plaintiffs' evidence convincingly establishe[d] [was] Wal–Mart's 'policy' of allowing discretion by local supervisors." *Id.* at 355. The plaintiffs there failed to demonstrate "a common answer to the crucial question why I was disfavored." *Id.* at 352.

Those same dissimilarities defeat commonality here. Plaintiff's claim turns on the allegation that he received voicemails. The class definition, however, refers to persons who allegedly received communications in which Humana "used…a prerecorded voice," without clarifying whether this refers to prerecorded voicemails, prerecorded calls where a message actually played during a live call, or both. These different types of communications raise distinct legal and factual issues. Determining whether the deposit of a voicemail constitutes the statutory "use of a prerecorded voice" is a question peculiar to Plaintiff and any putative class member who received only voicemails. Individuals who received live calls in which a prerecorded message was actually played face a separate and materially different liability analysis. These groups do not share the same injury because the mechanism of the alleged violation differs. *See Dukes*, 564 U.S. at 349. That distinction alone means that liability cannot be established through uniform proof across the class. This is fatal because the question of liability would "need to present evidence that varies from member to member," and thus cannot qualify as a common question. *Messner*, 669 F.3d at 815.

The class definition's exclusion of numbers "assigned to a Humana customer or accountholder" produces additional individualized issues that likewise defeat commonality. The definition does not say whether the exclusion refers to the status of the person (i.e., a consumer who is a Humana customer) or to the internal

16

designation of telephone numbers in Humana's systems. Either interpretation requires individualized investigation. If the exclusion concerns consumer status, the Court would need to examine each putative class member's relationship with Humana. If it concerns telephone numbers internally assigned by Humana, the Court would have to investigate, number by number, whether the number was ever designated internally in a certain manner. Under *Dukes*, such member-specific determinations create precisely the type of "[d]issimilarities within the proposed class" that defeat commonality. *Dukes*, 564 U.S. at 350.

Moreover, the issue of consent independently destroys commonality. Consent is a substantive element of liability under § 227(b), and in a case involving prerecorded communications, the question of whether any individual provided prior express consent cannot be resolved on a classwide basis here. Consent may arise through enrollment in a Humana health plan, through submission of a telephone number during account creation, through interactions with Humana or its affiliates, through written materials, or through revocation at different times and in different forms. Each putative class member's consent history may be different. Because the presence or absence of consent requires individualized inquiries into the circumstances surrounding each person's relationship with Humana, the determination cannot be made with "the same evidence" for all class members. *Messner*, 669 F.3d at 815. The fact that consent must be evaluated separately for

17

each alleged call recipient means there is no single common answer that can resolve the claims in one stroke. *Dukes*, 564 U.S. at 349.

For all these reasons—the divergence between voicemail recipients and live-call recipients, the ambiguity surrounding the class exclusion for Humana customers or accountholders, and the individualized nature of consent—Plaintiff cannot identify any common contention "capable of classwide resolution" under Rule 23. *Dukes*, 564 U.S. at 350. The class therefore lacks commonality, and the class allegations must be stricken.

**D.     Plaintiff Is Not A Member Of The Class He Seeks To Represent.**

To bring forth a class action suit, "[i]t is axiomatic that the lead plaintiff must fit the class definition. *See, e.g., Bailey v. Patterson*, 369 U.S. 31, 32–33, (1962) ("[A plaintiff] cannot represent a class of whom they are not a part."); *Hayes v. Wal Mart Stores, Inc.*, 725 F.3d 349, 360 (3d Cir. 2013). "[W]here the lead plaintiff does not fit the class definition, the class may not be certified." Id. Additionally, this raises standing issues. *See Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974) ("To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents.").

Here, Plaintiff alleges that he received calls directly from Humana, not from Register.com, Inc. Every factual paragraph attributes the alleged conduct to Humana

alone. Compl. ¶¶ 18–25. Yet the proposed class is limited to those "to whom Register.com, Inc. placed a call." *Id.* ¶ 27. Plaintiff's own allegations thus exclude him from membership in the class he purports to represent.

This inconsistency is fatal. A plaintiff cannot represent a class of individuals affected by conduct he never experienced. *See Rodriguez*, 431 U.S. at 403. The class definition, as written, restricts membership to individuals called by a third party, Register.com. Plaintiff claims he was called by Humana itself. On the face of the pleading, he therefore lacks standing to pursue class claims on behalf of that group.

This disconnect is not a factual dispute suitable for discovery—it is a legal contradiction apparent from the complaint. The class as defined excludes Plaintiff entirely and for this reason alone, it must be stricken.

## V.  **CONCLUSION**

For the foregoing reasons, Humana respectfully requests that the Court strike Plaintiff's class allegations from the Complaint.

Dated: November 24, 2025

Respectfully submitted,

**HOEPPNER WAGNER & EVANS LLP**

By: _/s/ Larry G. Evans_____
    Larry G. Evans, Attorney #8180-64
    **HOEPPNER WAGNER & EVANS LLP**
    103 E. Lincolnway
    Valparaiso, IN 46383
    P: 219-464-4961
    F: 219-465-0603
    *Attorneys for Defendant Humana, Inc.*

## CERTIFICATE OF SERVICE

I certify that on November 24, 2025, I electronically filed Defendant Humana Inc.'s Motion to Strike Class Allegations with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Cassandra P. Miller
Samuel J. Strauss (*pro hac vice forthcoming*)
**STRAUSS BORRELLI PLLC**
980 North Michigan Avenue, Suite 1610
Chicago, IL 60611

Anthony Paronich
**PARONICH LAW, P.C.**
350 Lincoln St., Suite 2400
Hingham, MA 02043

Brittany A. Andres PHV
Tori L. Guidry PHV
Troutman Amin LLP
400 Spectrum Center, Suite 1550
Irvine, CA 92618

*/s/ Larry G. Evans*
Larry G. Evans